**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSE LEBRON,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO.  24-1284** |
| | : | |
| **SUPERINTENDENT KENNETH** | : | |
| **EASON,** *et al.*, | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**MURPHY, J.**                                                                **June 5, 2024**

*Pro se* Plaintiff Jose Lebron, a prisoner currently confined at SCI Forest, brings this civil

rights action pursuant to 42 U.S.C. § 1983 and asserts constitutional claims against SCI Chester

prison officials for allegedly failing to protect him from a violent inmate.  Mr. Lebron seeks to

proceed *in forma pauperis*.  For the following reasons, the Court will grant Mr. Lebron leave to

proceed *in forma pauperis* and dismiss his Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Because many of Mr. Lebron's claims will be dismissed without prejudice, he will be granted the

option of filing an amended complaint.

**I.    FACTUAL ALLEGATIONS**

Mr. Lebron names two Defendants associated with SCI Chester: (1) Superintendent

Kenneth Eason and (2) John Doe-1, a correctional officer.  (DI 2 at 2.)  Mr. Lebron alleges that

Defendants failed to protect him from a "violent attack" by an inmate.  *Id*. at 4.  Specifically, on

the evening of June 22, 2022, after Mr. Lebron left his cell and secured the door, John Doe-1

"opened the door to [Lebron's] cell."  *Id*. at 5.  When Mr. Lebron returned to his cell, he

discovered an inmate there and asked the inmate to leave.  *Id*.  Mr. Lebron and the inmate

"started fighting," during which the inmate hit Mr. Lebron several times in the head and face

with a combination lock.  *Id*. at 5-6.  Mr. Lebron "tried to fight the inmate off."  *Id*. at 6.  Mr. Lebron states that "[t]his incident happened . . . because [John Doe-1] opened [Lebron's] door for another inmate," which according to Mr. Lebron is a violation Pennsylvania Department of Corrections ("DOC") policy.  *Id*. at 6.

As a result of the incident, Mr. Lebron suffered injuries to his head and face.  *Id*. at 6.  He was taken to the hospital where he underwent testing and was treated for his injuries and pain.  *Id*.  Mr. Lebron "received a misconduct for fighting" and was placed in the restrictive housing unit ("RHU") for 75 days, which according to Mr. Lebron was an "overexaggerated discipline[ary] sentence."  *Id*. at 5.  At the time, Mr. Lebron was labeled as "C-code (mental health)" status, and as such, according to Mr. Lebron, he was not "suppose[ed] to receive more than 30 days in the RHU."  *Id*.  He was then placed on "AC-status" and transferred to SCI Forest.  *Id*.  Mr. Lebron alleges that John Doe-1's "negligence" and "failure to follow policy [and] procedure" caused his injury, his disciplinary action, and his ultimate transfer.  *Id*.  Mr. Lebron bases his claims against Superintendent Eason on allegations that Eason failed to properly train and supervise his corrections officers and failed to protect his prisoners from inmate attacks.  *Id*. at 4-5.  Based on these allegations, Mr. Lebron asserts Eighth Amendment claims under § 1983.  Liberally construing his complaint, the Court also understands Mr. Lebron to assert Fourteenth Amendment due process claims based on his detention in the RHU.  Mr. Lebron seeks money damages.  *Id*. at 6.

## II.     STANDARD OF REVIEW

The Court grants Mr. Lebron leave to proceed *in forma pauperis* because it appears that

he is incapable of paying the fees to commence this civil action.[1]  Notwithstanding any filing fee,

28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the complaint if it fails to state a

claim on which relief may be granted.  Whether a complaint fails to state a claim under §

1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Rule

12(b)(6).  *Turner v. Spaley,* 501 Fed. Appx. 101, 102 (3d. Cir. 2012) (per curiam).  Rule 12(b)(6)

requires the Court to determine whether the complaint contains "sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  At this early stage, we will accept the facts alleged in the *pro se* complaint

as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the

complaint — liberally construed — contains facts sufficient to state a plausible claim.  *Shorter v.*

*United States*, 12 F.4th 366, 374 (3d Cir. 2021).  Conclusory allegations will not suffice.  *Iqbal*,

556 U.S. at 678.   As Mr. Lebron is proceeding *pro se*, the Court construes his allegations

liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina,*

*Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III.     DISCUSSION

Mr. Lebron asserts Eighth Amendment and Fourteenth Amendment claims against the

Defendants pursuant to § 1983, the vehicle by which federal constitutional claims may be

brought in federal court.  "To state a claim under § 1983, a plaintiff must allege the violation of a

---

[1] The Court construes Mr. Lebron's motion to proceed *in forma pauperis* (DI 1) and prisoner account statement (DI 3) as substantially complying with the requirements of 28 U.S.C. § 1915(a).  Because he is granted *in forma pauperis* status, Mr. Lebron will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S.

42, 48 (1988).  In a §1983 action, the personal involvement of each defendant in the alleged

constitutional violation is a required element, and, therefore, a plaintiff must allege how each

defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998) ("liability cannot be predicated solely on the

operation of respondeat superior").

  A.  **Official Capacity Claims**

  Mr. Lebron asserts claims against Eason in his official capacity only and against John

Doe-1 in both his official and individual capacities.  Official capacity claims are

indistinguishable from claims against the governmental entity that employs the Defendants, here

the DOC.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . .

'generally represent only another way of pleading an action against an entity of which an officer

is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs*., 436 U.S. 658, 690, n. 55 (1978)).

Because the DOC is an agency of the Commonwealth of Pennsylvania, it is not a "person"

subject to liability under § 1983 and is entitled to Eleventh Amendment immunity from suit in

federal court.  *See Lavia v. Pennsylvania Dep't of Corr*., 224 F.3d 190, 195-96 (3d Cir. 2000)

(explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is

a part of the executive department of the Commonwealth, it shares in the Commonwealth's

Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983); *see*

*also Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012) (per curiam) ("[A]s a state

agency and the prison it administers, the Department of Corrections and SCI-Albion are not

'persons' and thus cannot be sued under 42 U.S.C. § 1983.").  In sum, official capacity claims

against the Defendants named here are really claims against the DOC, and the DOC is shielded from § 1983 suits by Eleventh Amendment immunity. *See Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."). Accordingly, all claims asserted against John Doe-1 and Eason in their official capacities are dismissed with prejudice.

Since Mr. Lebron appears to not have understood the implication of naming Eason in his official capacity only, the Court will liberally construe the complaint to assert claims against Eason in his individual capacity. *See Downey*, 968 F.3d at 310 ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings."); *Coward v. City of Philadelphia*, No. 21-1619, 2021 U.S. Dist. LEXIS 173907, at *6 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed event though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).[2]

### B.     Failure to Protect Claim against Officer John Doe-1

Mr. Lebron asserts an Eighth Amendment failure to protect claims against John Doe-1 based on allegations that he opened Mr. Lebron's cell door, allegedly in violation of DOC policy, which permitted a violent inmate to enter Mr. Lebron's cell and attack him. Under the Eighth Amendment, prison officials have a duty to take reasonable measures to guarantee the safety of the inmates. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994). Namely, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Hamilton v. Leavy*, 117

---

[2] *See infra* Part III(C) for our analysis regarding the liability of Mr. Lebron in his individual capacity.

F.3d 742, 746 (3d Cir. 1997) (quoting *Farmer*, 511 U.S. at 833).  However, "not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (quoting *Farmer*, 511 U.S. at 834).

  To state a plausible failure-to-protect claim under the Eighth Amendment, Mr. Lebron must allege plausibly that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) the prison official acted with deliberate indifference to that substantial risk of serious harm; and (3) the official's deliberate indifference caused harm. *Hamilton*, 117 F.3d at 746; *see also Farmer*, 511 U.S. at 834.  Deliberate indifference is a subjective standard. *Farmer*, 511 U.S. at 837; *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).  Mr. Lebron must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his] health or safety." *Beers-Capitol*, 256 F.3d at 135.  "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 133.

  Mr. Lebron's allegations, as pled, fail to state a failure to protect claim against John Doe-1.  Mr. Lebron does not allege sufficient facts to raise a plausible inference that John Doe-1 knew of and disregarded an excessive risk to Mr. Lebron's safety.  He alleges no facts suggesting that John Doe-1 was even aware that Mr. Lebron was at risk of being attacked by the inmate. Rather, Mr. Lebron avers only that John Doe-1 opened Mr. Lebron's cell door, allegedly in violation of DOC policy, and that such "negligence" allowed an inmate to enter his cell and attack him.  (DI 2 at 4-6).  This is insufficient to state a plausible failure to protect claim.  *See Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (per curiam) ("Here, [plaintiff] has failed to allege that [defendant] behaved with deliberate indifference in unlocking [plaintiff's] cell. The complaint sets forth no facts to suggest that [defendant] knew that [a fellow inmate] would

attack [plaintiff].").  The fact that John Doe-1 may have violated a prison policy by opening the door to Mr. Lebron's cell does not support an inference of deliberate indifference.  *See Bracey v. Pennsylvania Dep't of Corr.*, 571 F. App'x 75, 78-79 (3d Cir. 2014) (per curiam) (concluding that violation of prison policy "is insufficient by itself to support an argument for deliberate indifference"); *Schwartz v. Cty of Montgomery*, 843 F. Supp. 962, 971 (E.D. Pa. 1994), *aff'd* 37 F.3d 1488 (3d Cir. 1994) (stating that failure to observe institutional policies regarding supervision of dangerous inmates constituted neglisgence but did not support a § 1983 action for violation of the Eighth or Fourteenth Amendments because the officers' conduct did not rise "beyond the level of negligence to that of deliberate indifference").

Mr. Lebron's allegations sound in negligence rather than in deliberate indifference, and negligence is insufficient to allege a plausible Eighth Amendment violation.  *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 46 (3d Cir. 2015) (holding that the allegations did "not state a claim of a constitutional violation under the Eighth Amendment" when they asserted a simple negligence claim at most"); *Hope v. Warden York Cty. Prison*, 972 F.3d 310, 329 (3d Cir. 2020) ("Deliberate indifference requires significantly more than negligence."); *Pearson v. Karnes*, No. 10-0058, 2011 U.S. Dist. LEXIS 24581, at *8 (M.D. Pa. Mar. 9, 2011) (dismissing failure to protect claim and concluding that "[a]t most, [the plaintiff's] allegations might support a claim that CO Mease was negligent in opening his door at the same time the other inmate's door was opened" and that "[a]llegations of negligence, however, are not sufficient to maintain an action under 42 U.S.C. § 1983"); *Harley v. Warren*, No. 13-7656, 2017 U.S. Dist. LEXIS 165017, at *7 (D.N.J. Oct. 4, 2017) ("Negligent failure to prevent an attack by an inmate is insufficient to establish violation of the Eighth Amendment.").  Accordingly, Mr. Lebron's Eighth Amendment failure to protect claim against

John Doe-1 must be dismissed.  The Court will dismiss this claim without prejudice, allowing

Mr. Lebron to reassert it in an Amended Complaint to the extent he can allege facts sufficient to

cure the defects the Court has noted.

### C.    Claim against Superintendent Eason

As discussed above, liberally construing the complaint, Mr. Lebron also asserts an Eighth

Amendment claim against Superintendent Eason.  *See supra* Part III(A).  However, Mr. Lebron

alleges no facts about Eason's involvement in the events giving rise to constitutional claims.  As

noted above, an individual must be personally involved in violating a plaintiff's rights to be

liable under § 1983.  *See Rode*, 845 F.2d at 1207 ("A defendant in a civil rights action must have

personal involvement in the alleged wrongs."); *see also Iqbal*, 556 U.S. at 676 (explaining that

"a plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution").  Generalized allegations that a supervisory

defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege

personal involvement in an underlying constitutional violation.  *See Saisi v. Murray*, 822 F.

App'x 47, 48 (3d Cir. 2020) (per curiam), cert. denied No. 20-7011, 2021 U.S. Lexis 1774

(2021).

Nor has Mr. Lebron alleged a basis for supervisory liability against Eason.  There are

"two general ways in which a supervisor-defendant may be liable for unconstitutional acts

undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014),

rev'd on other grounds by *Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a supervisor may be

liable if he or she "with deliberate indifference to the consequences, established and maintained a

policy, practice or custom which directly caused the constitutional harm." *Id*.  "Second, a

supervisor may be personally liable under § 1983 if he or she participated in violating the

plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*; *see also Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'") (quoting *Rode*, 845 F.2d at 1207).

Mr. Lebron's supervisory liability claim against Eason fails for two reasons. First, Mr. Lebron has not alleged any facts to support a plausible inference that Eason participated in or directed others to open Mr. Lebron's cell door to allow another inmate to enter, or that Eason was otherwise deliberately indifferent to an excessive risk to Mr. Lebron's safety. Instead, Mr. Lebron merely alleges that Eason fail[ed] to properly train his corrections officers and fail[ed] to act or prevent violent attacks." (DI 2 at 4.) These conclusory statements are not sufficient to state a plausible Eighth Amendment claim. *See Aruanno v. Corzine*, 687 F. App'x 226, 229 (3d Cir. 2017) (per curiam) (claims that supervisory liability failed when plaintiff "did not show that the Defendants were aware of the violations alleged in his complaint, either before or after they occurred"). Second, his claim fails because he does not plausibly allege an underlying constitutional violation. A supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. *Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (per curiam) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). As noted above, Mr. Lebron failed to allege a plausible claim that John Doe-1 failed to protect him from inmate violence. Accordingly, Mr. Lebron's Eighth Amendment claim against Eason will be dismissed without prejudice.

D.       **Due Process Claim Based on Placement in the RHU**

Liberally construing the complaint, it is possible that Mr. Lebron intended to assert a due process claim based on his 75-day detention in the RHU.  Convicted and sentenced prisoners have no inherent constitutional right to any particular housing assignment.  *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005) ("We have held that the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement.").  Rather, in the prison context, due process protection is "limited to those situations where deprivation of [a liberty] interest 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  "[C]onfinement in administrative or punitive segregation will rarely be sufficient, without more, to establish the kind of 'atypical' deprivation of prison life necessary to implicate a liberty interest."  *Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) (quoting *Sandin*, 515 U.S. at 486)); *see also Burns v. Pennsylvania Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) ("[I]nmates are generally not entitled to procedural due process in prison disciplinary hearings because the sanctions resulting from those hearings do not usually affect a protected liberty interest.").

In deciding whether conditions are atypical and significant for purposes of establishing a liberty interest, a court must consider "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life."  *Williams v. Sec'y Pennsylvania Dep't of Corr.*, 848 F.3d 549, 560 (3d Cir. 2017).  In determining whether a hardship is atypical or significant, the relevant comparator is the general population of inmates.  *Id.* at 564.

Mr. Lebron alleges that he was placed in the RHU for disciplinary reasons after fighting with another inmate.  He further alleges that he stayed in the RHU for 75 days, which he alleges was "overexaggerated" and in conflict with prison policy that C-code status inmates, like Mr. Lebron, receive no more than 30 days in the RHU.  (DI 2 at 5.)  To the extent Mr. Lebron asserts a due process claim, he has not tied any of the allegations about his detention in the RHU to any of the named Defendants.  In addition, even assuming SCI Chester policy prohibits C-code status inmates from being detained in the RHU for more than 30 days, a prison's non-compliance with its own rules and regulations does not automatically give rise to a constitutional violation. *Laufgas v. Speziale*, No. 04-1697, 2006 U.S. Dist. LEXIS 62089, at *28-29 (D.N.J. Aug. 31, 2006) ("[A] prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.").

Moreover, Mr. Lebron alleges no facts about the conditions of his confinement in the RHU, including any allegations about hardships suffered there or allegations that would establish the extent to which the RHU differs from the conditions in the general population.  Based on the little detail provided, the complaint as pled does not give rise to a due process claim based on Mr. Lebron's placement in the RHU.  *See Mutschler v. Tritt*, 685 F. App'x 167, 170 (3d Cir. 2017) (per curiam) ("[W]e agree that Mutschler's complaint [which alleged that he was held in disciplinary segregation for 180 days] did not make out a due process claim, as the complaint failed to include facts that suggest that he experienced disciplinary sanctions that involved a protected liberty interest."); *Griffin*, 112 F.3d at 708 (holding that exposure to confinement with closer supervision and control for "periods as long as 15 months" did not constitute a due process

violation).  Accordingly, to the extent that Mr. Lebron intended to assert a due process claim, the claim will be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, the Court will dismiss Mr. Lebron's complaint in part with prejudice and in part without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  The official capacity claims will be dismissed with prejudice.  The remainder of the complaint will be dismissed without prejudice.  Considering Mr. Lebron's *pro se* status, he will be given the option of filing an amended complaint in the event he can cure the defects the Court has noted as to his claims dismissed without prejudice.